IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ABBY FLAMMANG,

    Plaintiff,

v.                                                          1:24-cv-00263-DHU-JHR

ANGEL PORTILLO,
ANTHONY MARTIN,
ADEN HEYMAN,
CITY OF ALBUQUERQUE EX REL.
ALBUQUERQUE FIRE RESCUE DEPT.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant City of Albuquerque's Motion to Dismiss for Failure to State a Claim (Doc. 12). The Court held a hearing on the matter on January 08, 2025. Having considered the pleadings, the record before the Court, the arguments made by counsel at the hearing on the Motion, and the applicable law, the Court will **GRANT** Defendant City of Albuquerque's Motion to Dismiss.[1]

**I.
BACKGROUND**

On or about July 6, 2023, Abby Flammang ("Plaintiff") was invited to participate in a charity golf tournament by her sister, Erin Brandow ("Brandow"), a Lieutenant with Albuquerque Fire Rescue ("AFR"). Doc. 1-1 ¶ 8 (Compl.). Brandow invited Plaintiff to the charity golf tournament to support Plaintiff's nephew's football team. *Id.* Brandow introduced Plaintiff to

---

[1] This Memorandum Opinion and Order does not address any of the claims Plaintiff has brought against Defendants Angel Portillo, Anthony Martin, or Aden Heyman.

1

Defendants Anthony Martin ("Martin") and Angel Portillo ("Portillo") and the three started a group email, then a text thread to plan their tournament participation. *Id*. On July 15, 2023, Plaintiff, Defendants Martin, Portillo, and a fourth participant not party to the suit, participated in the tournament and consumed alcohol throughout the event. *Id.* ¶ 9. Defendant Martin invited Plaintiff to his residence, where Plaintiff, Portillo, and Martin consumed more alcohol at Martin's residence. *Id.* ¶ 10. Then, Defendant Aden Heyman ("Heyman") arrived with more alcohol. *Id.* ¶ 11. Plaintiff alleges in her Complaint she was "piled with more and more alcohol by the three defendants." *Id.* ¶ 12.

Plaintiff lost track of events, experiencing gaps in memory. *Id.* ¶ 13. When she regained consciousness, she realized she was wearing her bikini and was being penetrated by Portillo who was being coached and/or instructed by Heyman. *Id.* Plaintiff believes that Portillo and Martin were being instructed by Heyman to have sex with her. *Id.* ¶ 14. Then, Heyman switched places with Portillo and penetrated Plaintiff violently. *Id.* ¶ 15. Plaintiff insisted she needed to use the bathroom and it was then that she called a friend and escaped through a window, fearing she would be dragged back if these Defendants heard her opening the front door. *Id.* ¶ 16.

When Plaintiff told Brandow about the assault, Brandow informed Plaintiff "she did not want to discuss the incident further because she worked with the Defendants and it would be 'awkward' given her need to work with Heyman." *Id.* ¶ 17. Plaintiff believes that Heyman led a cover-up regarding her sexual assault. *Id.* ¶ 18. Bernalillo County filed a criminal complaint against Martin, Portillo, and Heyman on August 30, 2023, for Second Degree Sexual Penetration. *Id.* ¶ 19. The Defendants were fired on or about September 22, 2023. *Id.*

Plaintiff filed her Complaint in state court on February 2, 2024, raising federal constitutional claims against Defendants Portillo, Martin and Heyman (collectively the "individual

Defendants"), and Defendant City of Albuquerque ("Defendant" or "City"). Plaintiff brings claims under 42 U.S.C. §1983 for violation of the Fourth and Fourteenth Amendments and state claims for Infliction of Emotional Distress, Civil Battery, and Negligence. *Id*. ¶¶ 21, 29-31, 34-36, 39-42. The suit was removed to federal court on March 3, 2018, and the City filed this 12(b)(6) Motion to Dismiss on March 25, 2024.  Doc. 1; Doc. 12.

## II.
## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a 12(b)(6) motion, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). The court's function at the 12(b)(6) stage "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

However, "[a] plaintiff must go beyond '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' and plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023) (citations omitted).  In other words, a complaint must include enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Fed. R. Civ. P. 12(b)(6) is generally without prejudice. *See* 5B C. Wright & A. Miller, Federal Practice & Procedure § 1357 (4th ed. 2024). Nevertheless, in the Tenth

Circuit, "dismissal with prejudice is appropriate where a complaint fails to a state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022) (citation omitted).

## III.
## DISCUSSION

### A. Plaintiff Has Not Pled Sufficient Facts to Establish *Monell* Liability Against the City of Albuquerque.

Defendant City of Albuquerque first moves to dismiss Plaintiff's claim brought against it under 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendment, arguing that Plaintiff has not pointed to any facts that would establish a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Doc. 12 at 3. In response, Plaintiff points to several paragraphs in her Complaint, arguing that the paragraphs selected are sufficient to state a claim under *Monell* for the constitutional violations she alleges. Doc. 16 at 3.

Federal law provides that any person acting under color of state law who subjects another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…" 42 U.S.C. § 1983. In *Monell*, the Supreme Court held that a municipality is not vicariously liable under § 1983 for the alleged unconstitutional acts of its employees under a respondeat superior theory. *Monell*, 436 U.S. at 694. However, local governments may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury that the government as an entity is responsible under § 1983." *Id.* Establishing a claim for damages under § 1983 against municipal entities or local government bodies requires plaintiffs to show "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

A policy or custom for purposes of establishing municipal liability may take the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283–84 (10th Cir. 2019) (citation omitted).

Plaintiff first relies on paragraph 17 of her Complaint which she contends shows a "climate of fear of retaliation in the Department that intimidated witnesses because of the power of Lieutenant Heyman." Doc. 16 at 3. Paragraph 17 of the Complaint reads: "Brandow [Plaintiff's sister] informed Plaintiff she did not want to discuss the incident further because she worked with the Defendants and it would be 'awkward' given her need to work with Heyman." Doc. 1-1 ¶ 17. Plaintiff also directs the Court to paragraphs 22 through 27 of her Complaint wherein she alleges that the individual Defendants, all firefighters employed with the City at the time, acted under color of law even though they were off duty because they used their position to gain Plaintiff's trust; that Plaintiff's sister's reluctance to cooperate with an investigation was due to pressure; that the firefighter's involvement in the charity golf tournament was motivated by the Fire Department's community outreach goals; that individual Defendant Heyman used his authority to cover up the assault and intimidate Brandow against cooperation; that Plaintiff has sustained severe physical and emotional harm; and that alternatively the City of Albuquerque is liable under a state law vicarious liability theory. *Id*. ¶¶ 22–27.

Despite Plaintiff's reliance on the allegations made in these paragraphs, nowhere in these sections of the Complaint, or in any part of her pleadings, does Plaintiff identify a municipal policy or custom by the City, or explain how any such policy or custom caused or was somehow connected to the injury Plaintiff alleges she suffered—an omission that is fatal to her *Monell* claim. *See Hernandez v. Ellins*, 297 F. Supp. 3d 1211, 1220 (D.N.M. 2018) (explaining that without "mention of any policies or customs of [the municipal actor] at all, in any form, whether formal or informal…the [] Complaint fails to state a viable…claim."); *Griffin v. City of Artesia*, Civ. No. 23-215, 2023 WL 5337133, at *8 (D.N.M. Aug. 18, 2023) (noting that without mention of a specific policy or practice of any kind, plaintiff's *Monell* claims fail at the 12(b)(6) stage). Insofar as Plaintiff attempts to incorporate her state law claims in paragraph 27 of the Complaint, alleging vicarious liability, within her *Monell* claim, the Court notes that § 1983's "language cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692.

In sum, Plaintiff has not sufficiently alleged facts that would impose *Monell* liability upon the City. Therefore, the Court will dismiss Plaintiff's § 1983 claims against it.

**B. Plaintiff's Claims Against the City Brought Under the New Mexico Tort Claims Act Also Fail.**

Plaintiff also brings claims against the City alleging that it is vicariously liable for the torts of intentional infliction of emotional distress, battery, and negligence committed by the individual Defendants in this case. Defendant City of Albuquerque argues in its Motion to Dismiss that Plaintiff has failed to identify a provision of the New Mexico Tort Claims Act ("NMTCA") under which her claims fall, and that the only section under which Plaintiff's claims could possibly be brought, § 41-4-12 of the NMTCA, is inapplicable to Plaintiff's claims because firefighters are not law enforcement officers. Doc. 12 at 6. In her Response, Plaintiff confirms her claims are brought

6

under § 41-4-12 and argues that firefighters fall within the NMTCA's waiver of immunity for law enforcement officers under that section of the NMTCA because the City of Albuquerque's Fire Code charges firefighter's with maintaining order at fire scenes and vests firefighters with the power to investigate crimes and enforce the law in relation to fire safety. Doc. 16 at 4; Doc. 16-1, City of Albuquerque Fire Code (" Fire Code") §§ 104.10-13.[2]

The NMTCA grants immunity from tort liability to state governmental entities and public employees acting within the scope of duty unless waived by the New Mexico Religious Freedom Restoration Act or Sections 41-4-5 through 41-4-12 of the NMTCA. *See* NMSA 1978 §§ 41-4-2, 41-4-4. Section 41-4-12, under which Plaintiff brings her vicarious liability claims against the City, waives immunity for law enforcement officers for certain enumerated torts committed while acting within the scope of their duties. The section provides, in relevant part:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978 § 41-4-12.

The NMTCA does not waive immunity for law enforcement officers for torts not enumerated in Section 41-4-12, such as negligence or intentional infliction of emotional distress.

---

[2] City of Albuquerque, *City of Albuquerque Fire Code*, https://www.cabq.gov/fire/documents/fire-ordinance.pdf/view (linking the complete text of the Fire Code) (last visited Feb. 26, 2025).

*See Dickson v. City of Clovis*, 2010-NMCA-058, ¶ 19, 148 N.M. 831, 242 P.3d 398 ("it is well established in New Mexico that Section 41–4–12 immunity is not waived in an action for negligence…"); *Romero v. Otero*, 678 F. Supp. 1535, 1540 (D.N.M. 1987) ("the Tort Claims act does not waive the immunity of law enforcement officers for [intentional infliction of emotional distress]"). Therefore, because the claims of intentional infliction of emotional distress and negligence against the individual defendants in this case are not cognizable under Section 41-4-12, they cannot form the basis for the imposition of vicarious liability against the City under that section.

However, Section 41-4-12 does waive immunity for the tort of battery when committed by law enforcement officers acting within the scope of their duties. *See* NMSA 1978 § 41-4-12. Plaintiff argues that this waiver of immunity extends to firefighters, such as the individual defendants in this case, because "the definition of 'law enforcement officer' is broader than the category of 'police officer.'" Doc. 16 at 4. Plaintiff notes that Section 41-4-12 defines "law enforcement officer" as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." *Id*. (quoting NMSA 1978 § 41-4-12). According to Plaintiff, firefighters meet this definition of law enforcement officers because Section 104 of the Albuquerque Fire Code charges firefighters with maintaining public order at fire scenes and "vest[s] firefighters with the power to conduct fire investigations and to enforce the laws of the State related thereto." *Id*.

The Court disagrees that the individual Defendants in this case can be considered "law enforcement officers" within the meaning of the NMTCA. New Mexico courts have rejected expansive interpretations of "law enforcement officer" for purposes of waiving immunity under

the NMTCA. *See Coyazo v. State*, 1995-NMCA-056, ¶ 12, 120 N.M. 47, 897 P.2d 234, 236 (holding that a District Attorney in a prosecutorial role is not a "law enforcement officer" for purposes of waiver of immunity); *Callaway v. New Mexico Dep't of Corr.*, 1994-NMCA-049, ¶ 12, 117 N.M. 637, 641, 875 P.2d 393, 397 (corrections officers are not law enforcement officers under the NMTCA); *Vigil v. Martinez*, 1992-NMCA-033, ¶¶ 18, 20, 113 N.M. 714, 832 P.2d 405 (holding probation and parole officers are not law enforcement officers even though they may temporarily hold people in custody and have some powers of arrest). Moreover, while Plaintiff focuses on the law enforcement function of maintaining order, she ignores the NMTCA's further definition of law enforcement officers which clarifies that:

> "[L]aw enforcement officer" means a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, ***whose principal duties under law*** are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

NMSA § 41-4-3D (emphasis added); *see also Rayos v. State ex rel. New Mexico Dep't of Corr., Adult Prob. & Parole Div.*, 2014-NMCA-103, ¶ 9, 336 P.3d 428, 431 ("The immunity waiver for 'law enforcement officers' requires that 'the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature.'") (citation omitted).

      Here, Plaintiff has not alleged, and could not credibly allege, that the principal duties of the individual Defendants in this case during the time they were firefighters employed by the City, was to hold persons in custody, maintain public order, or make arrests for crimes. As explained by the New Mexico Court of Appeals, the reference to maintaining public order in this context refers to "the sense that police officers, sheriff's deputies, and other traditional law enforcement officers are said to maintain public order." *Vigil*, 1992-NMCA-033, ¶ 18 (contrasting the maintenance of

public order that probation and parole officers perform by rehabilitating clients, which does not qualify under the law enforcement waiver of immunity).

The various provisions of the Albuquerque Fire Code do not alter the Court's determination that the individual defendants in this case were not "law enforcement officers" at the time of the alleged sexual assault within the meaning of Sections 41-4-12 or 41-4-3D. Plaintiff is correct in stating that the Fire Code provides both the Albuquerque Police Department and the Bernalillo County Sheriff the power to commission, as police officers, individual members of the Fire Investigations/Arsons Section. *See* Fire Code at §104.10.1. The Code also provides that "[m]embers of the Fire Investigation/Arson Section, *who have been certified* by a Law Enforcement Academy authorized by the State of New Mexico *and commissioned*, shall have the powers of arrest and authority to carry such weapons and utilize such equipment as necessary in the discharge of their duties. *Id*. at § 104.10.2 (emphasis added). But Plaintiff has presented no information or even an allegation that the individual Defendants in this case were ever members of the Fire Investigation/Arson Section of the Albuquerque Fire Department, were certified by a law enforcement academy, or were commissioned as law enforcement officers such that they had the powers of arrest or the authority to carry weapons. The Court thus finds that Plaintiff has not stated sufficient facts to establish that the firefighters at the center of this suit fall within the definition of "law enforcement officer" for purposes of waiving immunity under the NMTCA and imposing vicarious liability on the City.[3]

---

[3] Although it does not appear that the appellate courts of New Mexico have determined whether firefighters in general could ever be considered "law enforcement officers" under Section 41-4-12 or 41-4-3D, the Court predicts that the New Mexico Supreme Court would find that the individual Defendants in this case would not be considered to fit within that definition given the plain language of the NMTCA, the cases from the New Mexico Court of Appeals that have narrowly construed the term, and the fact that there is no evidence these particular firefighters' principle duties included any of the tasks listed in Section 41-4-3D of the NMTCA. *See Wankier v. Crown*

10

Even if the individual Defendants at the center of this case were construed as law enforcement officers, the NMTCA only waives immunity for law enforcement officers acting *within the scope of their duties* and therefore the City could only be held liable for the actions of the individual Defendants if they were taken in that capacity. *See* NMSA § 41-4-12. To determine whether an employee's acts were performed within the scope of employment under New Mexico law, courts utilize a four-part test. As explained by the New Mexico Court of Appeals,

> An employee's action, although unauthorized, is considered to be in the scope of employment if the action (1) is the kind the employee is employed to perform; (2) occurs during a period reasonably connected to the authorized employment period; (3) occurs in an area reasonably close to the authorized area; and (4) is actuated, at least in part, by a purpose to serve the employer.

*Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 12, 142 N.M. 583, 588, 168 P.3d 155, 160 (quoting *Narney v. Daniels*, 1992-NMCA-133, ¶ 32, 115 N.M. 41, 49, 846 P.2d 347, 355).

There is no question, and no real dispute, that the individual Defendants' alleged intentional torts were not in the scope of their employment as firefighters. Because of the nature of the incident at issue in this case, the second and third factors under *Lessard* are not relevant here. As to the first and fourth factors, sexual assault and battery are certainly not the type of actions that the individual Defendants were employed to perform, and it cannot be the case that the individual Defendants' alleged actions were actuated to any extent by a purpose to serve their employer, the City of Albuquerque. *See id*.

---

*Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.").

11

For the above stated reasons, the Court finds that Plaintiff has not stated a plausible claim under the NMTCA for which relief can be granted and will grant the City of Albuquerque's Motion to Dismiss the NMTCA claims against it.

## C. Plaintiff's Aided-in-Agency Theory Does Not Apply in This Case to Impose Vicarious Liability on the City.

For each of the claims brought in her Complaint, Plaintiff asserts that the City is vicariously liable for the actions of the individual Defendants under an aided-in-agency theory. *See* Doc. 1-1, ¶ 24 (alleging vicarious liability for Fourth and Fourteenth Amendment Claims under 42 U.S.C. § 1983), ¶ 32 (alleging vicarious liability for intentional infliction of emotional distress), ¶ 37 (alleging vicarious liability for civil battery), ¶ 43 (alleging vicarious liability for negligence). In its Motion to Dismiss, the City argues that the aided-in-agency theory of vicarious liability is inapplicable because immunity for Plaintiff's underlying claims is not waived, and Plaintiff's case is distinguishable from those cases where the theory was held to apply. Doc. 12 at 7. Plaintiff counters that the aided-in-agency theory applies because she relied on the individual Defendants' status as firefighters to trust them and placed herself in a position she would not have ordinarily permitted. Doc. 16 at 5. Plaintiff argues that she was subject to the individual Defendants' "physical control" and thus the theory applies to hold the City vicariously liable for the tortious acts of the individual defendants. *Id.*

### 1. The Aided-in-Agency Theory of Vicarious Liability in New Mexico

The aided-in-agency theory of vicarious liability was first recognized and adopted by the Supreme Court of New Mexico in *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, 135 N.M. 539, 91 P.3d 58. There, the court held that employers may be held liable for torts an employee commits outside his or her scope of duty under an aided-in-agency theory of vicarious liability, which requires that the agent was "aided in accomplishing the tort by the existence of the agency

12

relation." *Id.* at ¶ 30. In *Ocana*, an employee of a furniture store alleged that a colleague of hers began to sexually harass her after he became general manager of the store where she worked and began to supervise her. *Id.* at ¶ 25. The alleged harassment included the supervisor following the employee around the store, touching himself in a sexually suggestive manner as he watched her, rubbing up against her in a sexually provocative manner, and parking his car next to hers even though he had a different designated parking space. *Id*. The employee sued the furniture store under Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act. *Id*. at ¶¶ 6-7. The plaintiff argued that the furniture store, as her employer, was vicariously liable for her supervisor's intentional torts of assault, battery, and intentional infliction of emotional distress. *Id.* at ¶ 29.

Reviewing the state district court's summary judgment as to plaintiff's vicarious liability claim for sexual harassment, the court adopted the aided-in-agency theory first articulated in the Second Restatement of Agency,[4] finding it consistent with the policies that underlie New Mexico's tort law. *Id.* at ¶ 31 (citing *Trujillo v. City of Albuquerque*, 1990-NMSC-083, ¶¶ 8-10, 110 N.M. 621, 624, 798 P.2d 571, 574 (1990)). The court determined the question was "whether [the plaintiff] presented sufficient evidence showing that her supervisor was aided by his status as her supervisor in committing his alleged torts." *Id.* at ¶ 32. "In order to prevail under the aided-in-agency theory," noted the court, the plaintiff "had to present sufficient evidence showing that [the

---

[4] The Second Restatement of Agency stated, in relevant part:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment unless:
>     . . .
> (d) the servant . . . was aided in accomplishing the tort by the existence of the agency relation.

Restatement (Second) of Agency § 219 (Am. Law Inst. 1958).

13

supervisor's] supervisory authority aided him in the commission of his torts." *Id*. The plaintiff, however, "failed to present any evidence showing that [the supervisor's] conduct occurred as a result of an abuse of his supervisory status." *Id*. Since there was "no evidence showing that [the supervisor] was able to commit his alleged acts by virtue of his supervisor status, summary judgment on this claim was proper." *Id*. Thus, while determining that the aided-in-agency theory required a showing that a supervisor's authority aided in the commission of an intentional tort, the New Mexico Supreme Court in *Ocana* left open whether the theory would apply outside the employment context and whether it would be subject to further limitation or definition.

A little more than a decade later, the court answered the question. In *Spurlock v. Townes*, several female inmates at a private prison brought suit in federal district court against a corrections officer, the company that operated a private prison where the corrections officer was employed, and the prison's warden, alleging various claims related to sexual assaults committed by the corrections officer against the inmates. 2016-NMSC-014, ¶¶ 2-3, 368 P.3d 1213. The accused corrections officer admitted during a plea hearing that he had intentionally restrained or confined the plaintiffs without their consent and had sexually assaulted them. *Id.* at ¶ 6. Thereafter, the federal district court granted judgment as a matter of law against the corrections officer on the plaintiff's constitutional claims and on the plaintiffs' state tort law claims for the intentional torts of sexual assault and false imprisonment. *Id*. The federal court, however, declined to hold the private prison and the warden vicariously liable for the judgment against the corrections officer because the intentional torts were outside the scope of his employment. *Id.* at ¶ 7.

On appeal, the Tenth Circuit certified certain legal questions involving New Mexico law to the New Mexico Supreme Court, providing the court an opportunity to further explain the scope of the aided-in-agency vicarious liability doctrine in New Mexico. *Id*. at ¶¶ 10-20. The court began

by acknowledging the concerns of other courts "that aided-in-agency as a theory independent of apparent authority risks an unjustified expansion of employer tort liability for acts of employees." *Id.* at ¶ 16 (quoting *Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1199 (Alaska 2009)). The court went on to say, "We agree that the theory should not apply to all situations in which the commission of a tort is facilitated by the torfeasor's employment," and that "more than the mere existence of the employment relation [must aid] in commission of the harassment." *Id.* (quoting *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 760, 118 S.Ct. 2257, 141 L.ED.2d 633 (1998)). The court determined then that it would follow the Alaska Supreme Court's decision in *Ayuluk* and would limit the aided-in-agency theory of vicarious liability to "cases where an employee has by reason of his employment substantial power or authority to control important elements of a vulnerable tort victim's life or livelihood." *Id.* at ¶ 17 (quoting *Ayuluk*, 201 P.3d at 1199). Thus, in the case of the corrections officer in *Spurlock*, the Supreme Court of New Mexico held that,

> In order to prevail under an aided-in-agency theory, [p]laintiffs had to prove that [the corrections officer] was aided in accomplishing his assaults by his status as a corrections officer that afforded him substantial power and control over [p]laintiffs. The 'extraordinary power' wielded by law enforcement over ordinary citizens has influenced many courts to hold the officers' employers vicariously liable for the abuse of that power. *See, e.g., Doe v. Forrest*, 2004 VT 37, ¶¶ 34-38, 176 Vt. 476, 853 A.2d 48 (discussing cases that found vicarious liability for sexual assaults by corrections and police officers). Corrections officers like [the defendant] are vested with extraordinary authority over inmates, substantially more than the authority of police officers over non-incarcerated citizens.

*Id.* at ¶ 18.[5] The court noted that the corrections officer who had assaulted the plaintiffs could enter the plaintiffs' cell blocks unannounced and unescorted, could remove the plaintiffs from their work

---

[5] In *Spurlock* the Supreme Court of New Mexico cited extensively to *Peña v. Greffet*, 110 F. Supp.3d 1103 (D.N.M. 2015), a decision from this federal district which was decided between *Ocana* and *Spurlock*. In *Peña,* after providing a thorough and well-articulated history of the aided-in-agency theory, the federal district court predicted that the Supreme Court of New Mexico would

15

stations, could exercise his authority over plaintiffs at any hour of the day or night, could reward or impose sanctions on the plaintiffs, and used all of this authority and control to take the plaintiffs from their cells and rape them. *Id.* at ¶ 20. Because the corrections officer was "aided in the commission of these intentional torts afforded to him by his employers, [the private prison and the warden were] vicariously liable under New Mexico law" for his actions. *Id.* at ¶ 21.

### 2. The City is Not Vicariously Liable for the Alleged Sexual Assault Committed by the Individual Defendants in this Case.

The City argues first that the aided-in-agency theory does not apply to hold it vicariously liable for the actions of the individual Defendants because of its immunity and the lack of waiver of that immunity under the NMTCA. The Court agrees. Although a few jurisdictions have allowed aided-in-agency vicarious liability claims to proceed against municipalities and other governmental entities, those cases involved allegations against law enforcement officers who were acting within the scope of their duties at the time of their intentional and tortious actions. *See Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 155 (Del. 2018) (finding state department of public safety vicariously liable for state police officer's sexual assault on victim after taking her into custody for shoplifting); *Doe v. Forrest*, 2004-VT-37, 176 Vt. 476, 853 A.2d 48 (2004) (holding a sheriff's department vicariously liable for one of its deputy's sexual assault upon the cashier at a store while on duty); *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 285 Cal. Rptr. 99, 814 P.2d 1241 (1991) (en banc) (holding the City of Los Angeles vicariously liable under aided-in-agency theory for police officer's rape of the plaintiff after he pulled her over for traffic violation); *Applewhite v. City of Baton Rouge*, 380 So.2d 119 (La. Ct. App. 1979) (holding the city vicariously liable for police officer taking plaintiff into custody and committing sexual abuse upon

---

expand the aided-in-agency theory outside the employment context but would limit the theory to cases where the tortfeasor had "extraordinary power" over his victim. *Id*. at 1134.

her in police vehicle). Here, the Court has determined that the individual Defendants were not law enforcement officers as defined by the NMTCA and were not acting within the scope of their duties at the time they allegedly assaulted Plaintiff. Plaintiff has cited to no authority where, under such circumstances, a municipality has been held vicariously liable for the actions of its employees.

The Court also determines that, even if the aided-in-agency theory of vicarious liability was available against a municipality like the City, the facts here would not establish such liability. As repugnant as the alleged actions of these individual Defendants were, the aided-in-agency theory does not apply in all situations where the commission of a tort is facilitated by the tortfeasor's employment, and the mere existence of a power differential between a tortfeasor and a victim is insufficient to establish an aided-in-agency claim. *See Spurlock*, 2016-NMSC-014, ¶ 16. Indeed, after *Spurlock*, Plaintiff would have to show that the individual Defendants, through their employment with the City, had substantial, if not extraordinary, power or authority to control important elements of Plaintiff's life or livelihood. *See id*. Here, unlike the cases in *Spurlock* and Peña,[6] Plaintiff does not present such facts. Plaintiff has alleged in her Complaint that she was invited by her sister to a charity event to support her nephew's football team, Doc. 1-1, ¶ 8, that the individual Defendants were off-duty, *Id.* ¶ 22, that she was invited to an individual Defendant's home, *Id.* ¶ 10, that she and the individual Defendants consumed alcohol at the residence, *Id.* ¶¶ 11-12, and that she later experience gaps in memory and then regained consciousness and realized she was being penetrated. *Id.* ¶ 13. These facts do not establish the type of substantial power and control over a victim found in cases involving corrections officers and inmates or law enforcement

---

[6] In *Peña*, the plaintiff, who suffered from mental illness, was subjected to years of control, sexual assault, rape, and abuse by a corrections officer who utilized the power conferred by his private employer to injure plaintiff repeatedly while she was incarcerated and on probation. 110 F. Supp.3d at 1106-08.

officers and citizens whom they arrest or detain. Because the requisite level of control necessary to establish vicarious liability under the aided-in-agency theory is not present here, the Court will dismiss Plaintiff's vicarious liability claims against the City of Albuquerque.

## IV.
## CONCLUSION

For the reasons stated above, Defendant City of Albuquerque's Motion to Dismiss for Failure to State a Claim (Doc. 12) is **GRANTED**, and the Court will dismiss the claims brought against the City with prejudice.[7]

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

---

[7] "A dismissal with prejudice is appropriate where a complaint fails to state a claim ... and granting leave to amend would be futile." *Brule v. Blue Cross and Blue Shield of New Mexico*, 455 Fed. Appx. 836, *838 (10th Cir. 2011) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)). Plaintiff's Fourth and Fourteenth Amendment claims would be futile because she has not identified, and most likely could not identify, a custom or policy by the City which would further sexual assaults by off-duty firefighters; nor has she identified any action by a final policymaker that could tie the individual firefighters' off-duty behavior to the City. There is no waiver of the City's immunity for Plaintiff's intentional infliction of emotional distress and negligence claims, and her civil battery claim fails because the NMTCA only waives immunity only for law enforcement officers acting within the scope of their duties. *See* NMSA § 41-4-12. Finally, allowing Plaintiff to amend her complaint would not change the fact that the individual Defendants in this case did not have, by virtue of their employment with the City, substantial or extraordinary power or authority to control Plaintiff's life or livelihood.